**2008 BNH 006**        Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                          Bk. No. 06-11306-JMD
                                                                                Chapter 7
David D. Brown,

Steven M. Notinger, Chapter 7 Trustee of David D. Brown
and Chapter 7 Trustee of Simply Media, Inc., and
Bradley C. Reifler,
                  Plaintiffs,

v.                                                                              Adv. No. 06-1450-JMD

Deaver Brown a/k/a David Deaver Brown,
Individually and as Successor Trustee of the
First Fisher Mountain Trust, and
Christina R. Brown, Individually and as Postpetition
Successor Trustee of the First Fisher Mountain Trust,
                  Defendants

*Stephen F. Gordon, Esq.*
*Todd B. Gordon, Esq.*
*Gordon Haley LLP*
*Boston, Massachusetts*
*Attorneys for Plaintiffs*

*Bruce A. Harwood, Esq.*
*Sheehan Phinney Bass + Green, P.A.*
*Manchester, New Hampshire*
*Attorney for Plaintiffs*

*James V. Tabner, Esq.*
*Concord, Massachusetts*
*Attorney for Defendants*

## MEMORANDUM OPINION

## I.      INTRODUCTION

        On November 20, 2007, December 4, 2007, and December 6, 2007, the Court conducted

a trial of claims brought by Bradley C. Reifler ("Reifler") and Steven M. Notinger ("Notinger"),

the chapter 7 trustee of the estates of David D. Brown (the "Debtor" or "Deaver Brown") and

Simply Media, Inc. ("Simply Media") (Reifler and Notinger, collectively, the "Plaintiffs" or

"Counter-Defendants"), and counterclaims asserted by Deaver Brown, individually and as

successor trustee of the First Fisher Mountain Trust (the "Fisher Mountain Trust") and Christina

R. Brown ("Christina Brown"), individually and as postpetition successor trustee of the Fisher

Mountain Trust (collectively, the "Defendants" or "Counter-Plaintiffs").  The Plaintiffs'

complaint contained five counts:  Count I seeking a declaratory judgment and turnover, Count II

seeking avoidance of transfers pursuant to New Hampshire's Uniform Fraudulent Transfer Act,

Count III seeking turnover of assets in alter egos and sham trusts, Count IV seeking damages for

civil conspiracy, and Count V seeking avoidance of transfers of corporate funds.  The

Defendants' counterclaim contained four counts:  Count I for abuse of process, Count II for

tortious interference with advantageous relations, Count III for breach of fiduciary duty, and

Count IV for breach of Massachusetts chapter 93A, section 11.

       The parties filed various pretrial motions, and at the commencement of the trial, the

Court granted the Counter-Defendants' motion seeking to strike Count III of the counterclaim.

Post-trial Reifler filed a motion for separate and final judgment as to the remaining

counterclaims, which motion the Court granted.  The Court then entered final judgment in favor

of Reifler on Counts I, II, and IV of the counterclaim, thus, resolving all remaining counts of the

counterclaim.  In addition, on December 4, 2007, the second day of trial, the Court dismissed

Count II of the complaint following the Defendants' oral motion for directed verdict.  For that

reason, the Court must consider only Counts I, III, IV, and V of the complaint in this opinion.

       This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§

1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States

Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.    FACTS

Deaver Brown has been a New Hampshire resident since 1980 and lives on property in Thornton, New Hampshire (the "New Hampshire Property").  The New Hampshire Property consists of two parcels of real estate.  Parcel 67 consists of land and a house.  Legal title to Parcel 67 is purportedly held by Christina Brown as successor trustee of the Fisher Mountain Trust;[1] the beneficiary of the Fisher Mountain Trust is allegedly Christina Brown.  Parcel 68 adjoins Parcel 67.  Parcel 68 is a vacant lot; however, the septic system for the house on Parcel 67 is on Parcel 68.  Legal title to Parcel 68 is currently held by Christina Brown individually.

Both Parcel 67 and Parcel 68 were owned by Deaver Brown at the time Deaver Brown and Christina Brown were married in 1986.  In fact, Deaver Brown owned the New Hampshire Property together with his first wife and received title to the New Hampshire Property through his 1985 divorce.  In 1988, Christina Brown acquired a one-half undivided interest in Parcel 68. The record did not reveal whether she also acquired a similar interest in Parcel 67 at that time.  It is undisputed that Deaver Brown spends more time at the New Hampshire Property than Christina Brown who only visits there from time to time.  Christina Brown owns another home in Lincoln, Massachusetts, where she resides.

---

[1] Postpetition Deaver Brown, as successor trustee of the Fisher Mountain Trust, resigned and appointed Christina Brown as trustee.  However, upon the Debtor's bankruptcy filing, the right to appoint a successor trustee became property of the Debtor's bankruptcy estate and such right could be exercised only by the Trustee, absent abandonment back to the Debtor.  However, as the Court is concerned only in the Debtor's interest in property as of the commencement of the case in accordance with § 541(a) of the Bankruptcy Code, such postpetition transfer is of no import to this case.

In January 1991, Deaver Brown was sued.  In October 1991, he agreed to a judgment for $200,000.00, and judgment entered against him on December 11, 1991.  During this period, specifically, on May 2, 1991, Deaver Brown deeded Parcel 68 to Christina Brown for one dollar, purportedly for estate planning purposes.  On October 24, 1991, George Warshaw, Christina Brown's attorney and the first trustee of the Fisher Mountain Trust, purchased Parcel 67 at a foreclosure sale for $82,000.00.  The Defendants claim that the purchase price was paid by Christina Brown from the following sources:  $36,000.00 in the form of a gift from Christina Brown's mother and $49,000.00 from the personal funds of Christina Brown and her company Northeastern Reps.[2]  On February 9, 2004, Deaver Brown was appointed successor trustee of the Fisher Mountain Trust, and he remained the trustee on October 4, 2006, the date he filed chapter 7 bankruptcy.  Postpetition, on February 2, 2007, Deaver Brown resigned as trustee of the Fisher Mountain Trust and appointed Christina Brown as the second successor trustee of the Fisher Mountain Trust.

On July 15, 1995, Deaver Brown filed chapter 7 bankruptcy.  During that case, the chapter 7 trustee apparently investigated the transfers of the New Hampshire Property as being potentially fraudulent.  The chapter 7 trustee never filed any action seeking to avoid the transfers and the Debtor received his discharge in the ordinary course.

In the late 1990s, Simply Media was formed.  Its business initially involved the sale of magazines and books but moved to the production and sale of CD titles to various retailers.  According to the Defendants, Simply Media had an office and used space at the New Hampshire

---

[2]  The Defendants produced copies of four checks, the total of which actually exceeds the $82,000.00 price.  One check in the amount of $36,000.00 was written on an account in the name of a trust, of which Christina Brown's mother was trustee, while the other three checks were bank checks, one in the amount of $10,000.00 from BayBank, a second in the amount of $19,000.00 from The Federal Savings Bank, and a third in the amount of $20,000.00 from BayBank.  None of the checks had any reference to Christina Brown or Northeastern Reps on them.

Property.  Simply Media did not have a lease but was a tenant-at-will.  Purportedly in lieu of paying salary to one or more of the Defendants and/or in lieu of paying rent for use of the New Hampshire Property, Simply Media paid expenses associated with the repair, maintenance, and use of the New Hampshire Property.  Evidence was presented that Simply Media paid the following expenses:  $15,615.42 to the Town of Thornton for the property tax bills during the years 2000 to 2005; $1,8697.60 to Verizon for telephone service during the period 2000 to 2004; $10,083.64 to NH Electric Co-op for electricity during the period 2000 to 2005; $23,730.00 to Bruce Angus to replace the entire roof at the New Hampshire Property in 2003; $3,410.00 to Royal Burnham for general contracting services performed at the New Hampshire Property during 2003 to 2005; and $1,850.00 to Millbrook Valley for homeowner's association fees for the New Hampshire Property in 2003.  Christina Brown testified that the payments were made in the full amount of the bills.

In July 2004, Reifler invested $500,000.00 in Simply Media.  As part of his agreement to invest these funds, Reifler was given an option to be repaid the $500,000.00 without interest.  In January 2005, Reifler exercised this option but Simply Media did not pay Reifler as required.  Accordingly, in March 2005, Reifler sued Simply Media and Deaver Brown as well as some of Simply Media's customers.  Deaver Brown testified that during the summer of 2005, he liquidated all of Simply Media's assets and paid all of Simply Media's creditors with the exception of Reifler.  On September 23, 2005, Reifler obtained a judgment against Simply Media and Deaver Brown in the amount of $521,354.13.  After that date, Reifler continued to pursue Deaver Brown and Simply Media seeking satisfaction of his judgment.

On October 4, 2006, Deaver Brown filed chapter 7 bankruptcy.  On November 13, 2006, Simply Media filed chapter 7 bankruptcy.  Notinger was appointed trustee in both cases.  At the

time of the bankruptcy filings, Reifler had suits pending in both New Hampshire and Massachusetts state courts against Deaver Brown and Simply Media.  The New Hampshire suit was removed to this Court on December 8, 2006, and became this adversary proceeding.  The Massachusetts suit was removed to this Court on January 10, 2007, and became a separate adversary proceeding (Adv. No. 07-1030-JMD).  During the course of litigation, both in this Court and previously in state court, Reifler and Notinger requested numerous documents from the Defendants, including the schedule of beneficiaries for the Fisher Mountain Trust, copies of the Defendants' income tax returns, and financial documents for Simply Media.  The Defendants did not produce documents to the Plaintiffs but rather indicated that such documents had been discarded in the normal course of their business affairs and suggested the Plaintiffs obtain relevant documents from third parties, including the Internal Revenue Service and banks.  While the Plaintiffs were able to recover some documents from third parties, the information obtained was limited.  On May 18, 2007, the Court entered a final judgment denying Deaver Brown a discharge pursuant to 11 U.S.C. § 727(a)(3) and (a)(7) due to his destruction and/or failure to keep records regarding his financial condition and the financial condition of Simply Media.  See Notinger v. Brown (In re Brown), Adv. No. 06-1456-JMD, Doc. No. 43.

## III.    DISCUSSION

Through their complaint, the Plaintiffs seek to recover the New Hampshire Property and avoid Simply Media's transfers of monies on account of the New Hampshire Property, all for the benefit of creditors of both Deaver Brown's and Simply Media's bankruptcy estates.

A.    Count I–Declaratory Judgment and Turnover and Count III–Turnover to Trustee in Bankruptcy of Assets in Alter Egos or Sham Trusts

In Count I of the complaint, the Plaintiffs seek a determination that Deaver Brown is the equitable owner of Parcel 67 or, alternatively, that Deaver Brown, and therefore Notinger, is entitled to appoint himself as beneficiary of the Fisher Mountain Trust and accordingly he holds the beneficial interest in Parcel 67.  They request that the Court order Christina Brown, as the present successor trustee of the Fisher Mountain Trust, to (1) take any and all actions necessary to either substitute Notinger, or his designee, for herself as the next successor trustee of the Fisher Mountain Trust or (2) convey Parcel 67 to Notinger by quitclaim deed.  The Plaintiffs also seek a determination that Deaver Brown is the equitable owner of Parcel 68 and request that the Court order Christina Brown to convey Parcel 68 to Notinger by quitclaim deed.

In Count III of the complaint, the Plaintiffs claim that the transfers of Parcel 67 and Parcel 68 were sham transactions and that Deaver Brown retained secret interests and/or exercises complete dominion and control over the parcels for his own benefit and therefore equity requires that Parcel 67 and Parcel 68 be treated as belonging to him.  The Plaintiffs seek a determination that Christina Brown, individually as record title holder to Parcel 68, and Christina Brown, as successor trustee of the Fisher Mountain Trust, are alter egos of and for Deaver Brown making Parcel 67 and Parcel 68 property of Deaver Brown's bankruptcy estate.  They request that the Court order Christina Brown, individually, to execute a quitclaim deed for Parcel 68 to Notinger and, as successor trustee of the Fisher Mountain Trust, to execute a quitclaim deed for Parcel 67 to Notinger.

The crux of both Count I and Count III is that Parcel 67 and Parcel 68 should be treated as Deaver Brown's own property and thus should be included as assets of his bankruptcy estate. Because these counts appear interrelated, the Court will consider them together.

7

### 1.      Property of the Bankruptcy Estate

Section 541(a)(1) of the Bankruptcy Code provides that property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a); Abboud v. The Ground Round, Inc. (The Ground Round, Inc.), 335 B.R. 253, 259 (B.A.P. 1st Cir. 2005); In re Pasteurized Eggs Corp., 296 B.R. 283, 288-89 (Bankr. D.N.H. 2003).  "Section 541 is construed broadly to bring any and all of the debtor's property rights within the bankruptcy court's jurisdiction and the umbrella of protections granted by the Bankruptcy Code, and to promote the goal of equality of distribution."  Ground Round, 335 B.R. at 259; see also City of Springfield v. Ostrander (In re Lan Tamers, Inc.), 329 F.3d 204, 209 (1st Cir. 2003); Pasteurized Eggs, 296 B.R. at 289.  Under the Bankruptcy Code, a bankruptcy trustee is charged to collect and liquidate all property of the estate and distribute the proceeds to creditors.  Hanley v. Notinger (In re Charlie's Quality Carpentry, LLC), 2003 BNH 025, 6 (citing 11 U.S.C. §§ 704, 725 and 726).

"The question of whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law; however, courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case."  Ground Round, 335 B.R. at 259 (citing Butner v. United States, 440 U.S. 48, 54 (1979)); see Pasteurized Eggs, 296 B.R. at 289.  In the absence of an overarching federal interest, property rights are determine under applicable state law.  Butner, 440 U.S. at 54.  Under federal bankruptcy law an estate may succeed to the same property interest that the debtor possesses and can take no greater interest in property than that held by the debtor on the petition date.  Lan Tamers, 329 F.3d at 212-13; Askenaizer v. Cutter (In re Big

World Prods., Inc.), 2002 BNH 013, 6 (citing Sticka v. Mellon Bank Nat'l Assoc. (In re Martin),

167 B.R. 609, 617 (Bankr. D. Or. 1994)).

Expressly excluded from the bankruptcy estate is any "[p]roperty in which the debtor

holds, as of the commencement of the case, only legal title and not an equitable interest . . ."  11

U.S.C. § 541(d); see Lan Tamers, 329 F.3d at 209.  "[W]hen a debtor does not own an equitable

interest in the property he holds in trust for another, that interest is not property of the estate for

purposes of the Bankruptcy Code."  Hanley, 2003 BNH 025, at 6 (citing Begier v. IRS, 496 U.S.

53, 59 (1990)).

In this case, it is undisputed that on the petition date the Debtor held legal title to Parcel

67, the parcel on which the house is located, as he was the trustee of the Fisher Mountain Trust

on that date.  It is also undisputed that on the petition date the Debtor did not hold legal title to

Parcel 68, the vacant lot, which property was titled in the name of Christina Brown.  At issue is

whether the Debtor held any beneficial interest in the New Hampshire Property on the petition

date.

### 2.    Parcel 67

The Debtor owned Parcel 67 prior to his marriage to Christina Brown in 1986.  In 1991,

Parcel 67 was sold by his mortgagee at a foreclosure auction to the Fisher Mountain Trust, a trust

created by George Warshaw, an attorney for Christina Brown.  Prior to and continuing after the

foreclosure, Deaver Brown maintained complete dominion and control over Parcel 67, using it as

his residence.  Both the Debtor and Christina Brown testified that Christina Brown is the

beneficiary of the Fisher Mountain Trust.  The Defendants have never produced the schedule of

beneficiaries, which would be the best evidence of who are the trust's beneficiaries.  The

Defendants testified that George Warshaw has the schedule of beneficiaries.  Neither party

presented any evidence that they had requested the schedule of beneficiaries from George
Warshaw, the settlor of the trust and its original trustee.  George Warshaw was subpoenaed as a
witness and apparently was present in the court on the first day of trial, but did not testify.  No
evidence was presented that the schedule of beneficiaries was lost or destroyed or otherwise
unavailable from George Warshaw.  At trial the Defendants denied having a copy of the
schedule of beneficiaries, despite their both having served as trustees of the trust.

From the evidence that was presented during the trial, it is clear that Deaver Brown lives
in the New Hampshire Property and uses it as his primary residence.  It is also clear that
Christina Brown only visits the New Hampshire Property from time to time and uses a home that
she owns in Lincoln, Massachusetts, as her primary residence.  While Christina Brown's use of
the property appears limited, the Plaintiffs never presented any <u>evidence</u> that Christina Brown
does not retain the beneficial interest under the Fisher Mountain Trust.

The Plaintiffs argue the Fisher Mountain Trust is void for want of a beneficiary because
the Defendants failed to produce the schedule of beneficiaries.  Under New Hampshire law, a
trust is created only if (1) the settlor has capacity to create a trust; (2) the settlor indicates an
intention to create the trust; (3) the trust has a definite beneficiary; (4) the trustee has duties to
perform; and (5) the same person is not the sole trustee, the sole current beneficiary, and the sole
remainder beneficiary.  NH RSA 564-B:4-402(a).  A "beneficiary" means a person that has a
present or future beneficial interest in a trust, vested or contingent, or holds a power of
appointment over trust property, in a capacity other than that of trustee.  NH RSA 564-B:1-
103(2).  A beneficiary is "definite" if the beneficiary can be ascertained now or in the future,
subject to any applicable rule against perpetuities.  NH RSA 564-B:4-402(b).  This rule is
consistent with the common law rule that a definite or ascertainable beneficiary must exist in the

case of a purely private trust.  <u>Society of Cincinnati v. Exeter</u>, 92 N.H. 348, 354 (1943); <u>Clark v. Campbell</u>, 82 N.H. 281, 283 (1926).  The law further provides that if a trust lacks a definite beneficiary, then the trust property shall remain the property of the settlor.  See <u>Nichols v. Allen</u>, 130 Mass. 211, 212 (1881).

In this case, the evidence at trial established that George Warshaw, not Deaver Brown, was the settlor of the Fisher Mountain Trust.  Thus, to the extent that the Plaintiffs' argument regarding the lack of a definite beneficiary has any validity, the trust property, Parcel 67, would revert, not to Deaver Brown as trustee of the Fisher Mountain Trust as of the petition date, but rather to George Warshaw as settlor of the Fisher Mountain Trust.  The evidence presented at trial supports a finding that at the time he created the trust, George Warshaw was acting as an attorney for Christina Brown, had acquired Parcel 67 at a properly conducted foreclosure sale from a third party mortgagee, and paid the foreclosure sale price with funds given to him by Christina Brown.  Accordingly, the failure of the trust for lack of a definite beneficiary would afford no relief to the Plaintiffs.

The Plaintiffs' stronger argument is that as of the petition date Deaver Brown was the trustee of the Fisher Mountain Trust and as trustee he could appoint himself as beneficiary of the Fisher Mountain Trust.  Upon review of the declaration of trust for the Fisher Mountain Trust (the "Trust Document") the Court finds that the Trust Document does not permit the trustee to appoint a beneficiary of the trust.  While the Trust Document provides that "[a]ny Trustee may without impropriety become a Beneficiary hereunder and exercise all rights of a Beneficiary with the same effect as though he or she or it were not a Trustee," Exhibit 3 at § 3.3, it further provides that "[t]he Declarant reserves the right and power to appoint, during the Declarant's lifetime or by last will and testament, additional persons as Beneficiaries, provided, however that

11

such persons appointed are members of the immediate family of any Beneficiary," Exhibit 3 at §

3.1.  The Trust Document does not permit a trustee to appoint a beneficiary of the Fisher

Mountain Trust.  The Court notes further that the Trust Document provides "[t]he interest of any

Beneficiary hereunder, either as to principal or income, shall not otherwise be capable of being

anticipated, alienated, or in any other manner assigned or anticipated by assignment except by or

to another Beneficiary, and shall not be subject to any legal or equitable process, bankruptcy or

insolvency proceedings, or the interference or control of creditors."  Exhibit 3 at § 3.5.  Section

541(c) of the Bankruptcy Code provides "[a] restriction on the transfer of a beneficial interest of

the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a

case under this title."  Thus, the Court concludes that the Trust Document provides no basis for

concluding that Deaver Brown had any beneficial interest in Parcel 67 arising from the Fisher

Mountain Trust, which interest would constitute part of his bankruptcy estate upon filing his

bankruptcy petition.

As discussed in detail below, in the context of determining Deaver Brown's interest in

Parcel 68, the Plaintiffs argue that Deaver Brown holds an interest in the New Hampshire

Property as the result of an implied or constructive trust.  Such analysis is not applicable to

Parcel 67 as such property is held in an express trust.  Rather, in the Court's view, Deaver

Brown's interest in Parcel 67 is that of a tenant-at-will, and therefore, only his rights as a tenant

passed to his bankruptcy estate when he filed bankruptcy.  The Court finds that the Plaintiffs

have not demonstrated any basis for granting Count I or Count III as to Parcel 67.

### 3.    Parcel 68

With respect to Parcel 68, the Plaintiffs essentially argue in Count I and again in Count

III that Deaver Brown is the equitable owner of Parcel 68, i.e., Christina Brown holds legal title

12

to Parcel 68 for Deaver Brown's benefit and not her own.  In order to establish that Deaver

Brown is the equitable owner, the Plaintiffs need to establish that Parcel 68 is being held in a

trust, either an express trust, an implied trust, or a constructive trust.

A trust is a fiduciary relationship in which one person, the trustee, holds the legal title to

property subject to a fiduciary duty to deal with or use the property for the benefit of another, the

beneficiary.  Hanley, 2003 BNH 025, at 8 (citing Restatement (Third) of Trusts § 2 (2003)).  An

express trust arises as the result of a manifestation of an intention to bring it into existence by its

creator, the settlor.  Id.  An implied trust arises or results by implication of law and is known as a

resulting trust.  Askenaizer v. May (In re Jewett), 2007 BNH 018, 8.  "Courts usually find

resulting trusts after a transfer of property has taken place to give legal effect to the parties'

intent at the time of the transfer."  Fleet Nat'l Bank v. Valente (In re Valente), 360 F.3d 256, 262

n.3 (1st Cir. 2004).  "Under New Hampshire law a traditional resulting trust occurs when one

party ('Party A') provides the consideration for a conveyance of land and instructs that title be

taken in the name of a third party ('Party B'). . . .  However, a resulting trust may also arise when

Party A borrows money from Party B for the purchase of land and title to the land is conveyed to

Party B."  Jewett, 2007 BNH 018, at 8.  A third type of trust is a constructive trust.  "The

imposition of a constructive trust is appropriate when a plaintiff produces clear and convincing

evidence that property has been transferred by one person to another, the transferee was in a

confidential relationship with the transferor, and the transferee would be unjustly enriched were

he or she allowed to retain the property."  In re Hellesen, 1999 BNH 002, 8 (citations omitted);

see also Wrenn Assocs., Inc. v. John J. Paonessa Co., Inc. (In re Wrenn Assocs., Inc.), 2005

BNH 022, 4 (citing Carroll v. Daigle, 123 N.H. 495 (1983)).  "The device of a constructive trust

is based upon principles of restitution, to prevent unjust enrichment of one person at the expense

of another." Cornwell v. Cornwell, 116 N.H. 205, 208-09 (1976).  "Constructive and resulting

trusts are traditional constructs utilized by courts . . . to avoid unjust enrichment and other forms

of injustice that would result from allowing the legal owner to benefit from the property."  Davis

v. Cox, 356 F.3d 76, 90 (1st Cir. 2004).  In this case, it is clear that Parcel 68 is not being held in

an express trust.  Rather, the issue is whether a resulting trust arises or a constructive trust should

be imposed.

Christina Brown testified that she acquired a one-half undivided interest in Parcel 68 in

1988.  Plaintiffs' Exhibit 1, a copy of the 1991 deed which references a deed transferring title

from Deaver Brown to Deaver Brown and Christina Brown dated May 25, 1988, confirms her

testimony about the 1988 transfer.  She also testified that the transfer of Parcel 68 from Deaver

Brown to herself in 1991 for $1.00 was done for estate planning purposes.  However, during this

time, Deaver Brown was the defendant in a lawsuit that ultimately resulted in judgment in the

amount of $200,000.00 being entered against him.

No evidence was offered regarding the circumstances of the 1988 transfer to Christina

Brown.  The undisputed testimony of the Defendants, however, was that Deaver Brown was the

owner of Parcels 67 and 68 prior to his divorce in 1985, he owned them after his divorce, he used

the parcels as his primary residence, and Christina Brown visited only occasionally.  While

Christina Brown testified that the 1991 transfer was part of estate planning, the evidence

regarding the 1991 transfer does not support that claim.  The Defendants offered no evidence of

any other estate planning documents executed contemporaneously with the 1991 transfer (e.g.,

wills, trusts, or durable powers of attorney).  After the 1991 transfer, Deaver Brown remained in

continuous possession of the property and maintained complete dominion and control over the

property, using its septic system for the benefit of his home on Parcel 67.  It appears that the

Defendants' intent at the time of the 1991 transfer was to let Deaver Brown continue to use the property as his own.  Christina Brown was unable to produce any documents that would corroborate her testimony that she acted as the legal owner of the New Hampshire Property.  For example, despite repeated requests by the Plaintiffs, she produced no income tax returns, essential documents that would have shown whether or not she deducted property taxes on the New Hampshire Property.

The Court finds that the 1991 transfer of Parcel 68 to Christina Brown was done for the same purpose as her purchase of Parcel 67 at the foreclosure sale in 1991, namely, to secure ownership of both parcels for the benefit of Deaver Brown.  The major difference between her acquisition of the two parcels is the evidence of consideration paid to a third party in connection with the acquisition of Parcel 67 at foreclosure in contrast to a complete absence of evidence of any consideration for either the 1988 or 1991 transfers to her of Parcel 68.  Christina Brown testified that she treated both parcels as her own and paid expenses for them from her own funds. However, she presented no supporting documentary evidence in the form of checks or tax returns to support those claims.

The Court does not find the testimony of the Defendants on the transfer of Parcel 68 to be credible.  Their testimony is not supported by any documentary evidence, despite Christina Brown holding the record title to Parcel 68 for sixteen years prior to trial.  The evidence presented in support of Count V (discussed below) tends to refute their testimony.  Accordingly, the Court finds that Christina Brown holds Parcel 68 for Deaver Brown in a resulting trust. Deaver Brown's beneficial interest in Parcel 68 is therefore part of his bankruptcy estate.

Additionally, the Court finds that justice demands the imposition of a constructive trust for Parcel 68.  See Milne v. Burlington Homes, Inc., 117 N.H. 813, 816 (1977).  Christina Brown

acquired title to Parcel 68 from her husband, with whom she had a confidential relationship.  No evidence was offered which could support a finding that Christina Brown paid any consideration for the transfer to her of Parcel 68.  It appears that expenses for the property, like real estate taxes, were paid by other parties, e.g., Simply Media, at certain points in time.  The Court finds that Christina Brown would be unjustly enriched if she were allowed to retain legal title to Parcel 68.  For that reason, equity requires that she be treated as the trustee of a constructive trust and that Deaver Brown be treated as its beneficiary.

As all beneficial interests are part of a debtor's bankruptcy estate under § 541(a)(1) of the Bankruptcy Code, Deaver Brown's interest in Parcel 68 is part of his bankruptcy estate and shall be turned over to the Trustee pursuant to § 542 of the Bankruptcy Code, which requires any entity "in possession, custody, or control" of property that the trustee may use or sell to turn such property over to the trustee.  Counts I and III of the complaint shall be granted as to Parcel 68.

### C.    Count IV–Civil Conspiracy

In Count IV of the complaint, the Plaintiffs contend that Deaver Brown and Christina Brown, and others, "acted in concert in committing the acts or permitting the suffering of the acts necessary to accomplish the transfers and present legal title holdings of Parcel 67 and Parcel 68 in furtherance of their unlawful goals and objectives," i.e., the transfer of property to defraud, delay, and/or hinder creditors.  The Plaintiffs contend in their complaint that the Defendants' acts have caused the Plaintiffs to suffer damage, loss, and harm.  For that reason, the Plaintiffs request that this Court enter an order awarding them compensatory damages in an amount equal to the fair market value of Parcel 67 and Parcel 68, plus interest and reasonable attorneys' fees, costs, and expenses.

In their post-trial memorandum and closing argument, the Plaintiffs failed to address their civil conspiracy claim.  Upon review of the trial record, the Court finds that the Plaintiffs have not offered sufficient evidence to support the elements of a claim for civil conspiracy.  See Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987) (quoting 15A C.J.S. Conspiracy § 1(1), at 596 (1967) ("A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means.")).  For that reason, Count IV of the complaint shall be denied.

**D.    Count V–Fraudulent Transfer of Simply Media, Inc. Corporate Funds (Constructive Fraud only)**

In Count V of the complaint, the Plaintiffs seek to avoid transfers of Simply Media funds, which were used pay expenses associated with the New Hampshire Property, and to recover the value of those transfers from Deaver Brown and Christina Brown, individually and as the successor trustee of the Fisher Mountain Trust.  At trial the Plaintiffs presented evidence that Simply Media paid at least $56,585.00 for telephone service, electric service, property taxes, homeowner's association fees, the total replacement of the roof at the New Hampshire Property, and other general contractor work performed at the New Hampshire Property without receiving reasonably equivalent value in exchange for the transfers.

Section 544(b) of the Bankruptcy Code permits the avoidance of transfers that are voidable under applicable law by an unsecured creditor.  11 U.S.C. § 544(b); Official Committee of Unsecured Creditors v. Foss (In re Felt Mfg. Co., Inc.), 371 B.R. 589, 634 (Bankr. D.N.H. 2007).  The "applicable law" referred to in 11 U.S.C. § 544(b) includes New Hampshire's version of the Uniform Fraudulent Transfer Act (the "UFTA") found in NH RSA 545-A.  Felt, 371 B.R. at 634.  Under UFTA, transfers may be found fraudulent if made under circumstances which, in the absence of actual fraud, are deemed fraudulent, i.e., "constructive" fraud claims

under NH RSA 545-A:4(I)(b).  Felt, 371 B.R. at 635; Dahar v. Jackson (In re Jackson), 318 B.R.

5, 12 (Bankr. D.N.H. 2004).  "Unlike actual fraud, constructive fraud is essentially unconcerned

with intent and instead focuses upon economic effect and involves an analysis of objective

factors."  Felt, 371 B.R. at 635; see Jackson, 318 B.R. at 13, 18.  The Plaintiffs here seek only to

avoid constructively fraudulent transfers under NH RSA 545-A:4(I)(b), which describes

constructively fraudulent transfers as follows:

> 545-A:4   Transfers Fraudulent as to Present and Future Creditors.
>
> I.      A transfer made or obligation incurred by a debtor is fraudulent as to a
>         creditor, whether the creditor's claim arose before or after the transfer was
>         made or the obligation was incurred, if the debtor made the transfer or
>         incurred the obligation:
>         . . .
>
>         (b)     Without receiving a reasonably equivalent value in exchange for
>                 the transfer or obligation, and the debtor:
>
>                 (1)     Was engaged or was about to engage in a business or a
>                         transaction for which the remaining assets of the debtor
>                         were unreasonably small in relation to the business or
>                         transaction; or
>
>                 (2)     Intended to incur, or believed or reasonably should have
>                         believed that he would incur, debts beyond his ability to
>                         pay as they became due.

NH RSA 545-A:4(I)(b).

In addition to seeking to avoid Simply Media's transfers of money, the Plaintiffs seek to

recover the amount of the transfers from Deaver Brown and Christina Brown, individually and as

the trustee of the Fisher Mountain Trust, as the Defendants were the beneficiaries of the

transfers.  Section 550(a) of the Bankruptcy Code specifically provides:

> Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
> trustee may recover, for the benefit of the estate, the property transferred, or, if
> the court so orders, the value of such property, from–

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  Section 550(a) defines the party from whom a trustee may seek to recover the property fraudulently transferred or the value or proceeds of such property.  Felt, 371 B.R. at 625 (citing Richardson v. United States (In re Anton Noll, Inc.), 277 B.R. 875, 878 (B.A.P. 1st Cir. 2002); Crafts Plus+, Inc. v. Foothill Cap. Corp. (In re Crafts Plus+, Inc.), 220 B.R. 331, 334 (Bankr. W.D. Tex. 1998)).  It "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee."  Crafts Plus+, 220 B.R. at 334 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 375-376 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 90 (1978)).

### 1.    Avoidance under 11 U.S.C. § 544(b) and UFTA

In order to recover on Count V of the complaint, the Plaintiffs must prove constructive fraud under UFTA by a preponderance of the evidence, Jackson, 318 B.R. at 13, which involves establishing the following elements:

1.    Simply Media transferred an asset without receiving a reasonably equivalent value in exchange for the transfer.

2.    Simply Media did either of the following:

    a.    Was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or

    b.    Intended to incur, or believe or reasonably should have believed that, it would incur debts beyond its ability to pay as they became due.

NH RSA 545-A:4(I)(b).

### a.     Reasonably Equivalent Value

The Plaintiffs offered evidence of numerous payments made by Simply Media to individuals and companies that provided services for the New Hampshire Property during 2000 to 2005.  The Defendants testified that Simply Media maintained an office in the New Hampshire Property and that the expenses were paid in lieu of rent.  Christina Brown also testified that such payments were made in lieu of receiving salary for her services.  The Defendants failed to offer any evidence, beyond the Defendants' bare assertions, that would show that Simply Media legitimately used the New Hampshire Property for a corporate purpose. The Defendants failed to produce documentary evidence that would show, for example, how Simply Media treated such payments for tax and financial reporting purposes.

At trial, the Plaintiffs introduced into evidence numerous checks drawn on Simply Media bank accounts which were used to pay at least $56,585.00 in expenses associated with the use and maintenance of the New Hampshire Property during a five year period from 2000 to 2005. All of those checks contained an address for Simply Media in either Concord or Lincoln, Massachusetts.  Christina Brown testified that the Massachusetts addresses were simply the location of post office boxes for the receipt of mail.  She testified that the New Hampshire Property was a satellite office for Simply Media.  However, bank statements and other mail for Simply Media were received at post office boxes near her home in Lincoln, Massachusetts, and she testified that in November of 2005, she "evicted" Simply Media from the office space in her home because she needed the space for other business ventures.  She confirmed that at a deposition in a Massachusetts lawsuit in October of 2006, where she testified that everything belonging to Simply Media at her home in Lincoln, Massachusetts was moved to the New Hampshire Property in November of 2005.  Among those items were invoices, a stock ledger and

books of records, tax returns, and bank records.  Shortly after a judge in the Massachusetts action ordered her to have those records returned to Massachusetts, Deaver Brown caused Simply Media to file bankruptcy in New Hampshire.  No documentary evidence was presented that reflected any New Hampshire address for Simply Media.  No evidence was presented which documented the percentage of its business that Simply Media performed at the New Hampshire Property.

Contrary to the testimony of Christina Brown, Deaver Brown testified that he did not have possession, custody or control of any records of Simply Media.  He testified that he did not "dispose" of any such records, but that he does not retain any records.  He simply discards them regularly.  Deaver Brown testified to entertaining customers of Simply Media at the New Hampshire Property, but was unable to supply any names, dates or other corroborating evidence of such use.  The Plaintiffs introduced into evidence two income statements and a balance sheet for Simply Media which were obtained from a former director of the company.  Deaver Brown testified that he had prepared these three documents, but that he had not retained any records used to prepare the financial statements.  He did testify that the documents were prepared for distribution to directors and shareholders of Simply Media.  The income statement for the years 1999 through 2004 (Exhibit 14) (the "2004 Statement") indicates that Simply Media had sales of $9,267,140.00 and net pretax income of $2,895,721.00 in 2004.  The income statement for the period 1999 through the first six months of 2005 (Exhibit 15) (the "2005 First Half Statement") reflects sales of $4,935,308.00 and after tax income of $992,558.00 for the first six months of 2005.  When Simply Media filed for bankruptcy on November 13, 2006, the bankruptcy schedules signed under penalty of perjury by Deaver Brown reflected no assets and only two creditors.  The statement of financial affairs, also signed by Deaver Brown under penalty of

perjury, indicated gross sales of $8,500,000.00 in 2004 or $767,140.00 less than the 2004

Statement.  Similarly, the statement of financial affairs indicated gross sales of $3,700,000.00 for

all of 2005 or $1,235,308.00 less than the sales for the first six months of 2005 shown on the

2005 First Half Statement.

      At trial, Deaver Brown testified that in the summer of 2005, he liquidated all of the assets

of Simply Media and paid all creditors except for the two listed in the bankruptcy schedules.

However, he presented no documentary evidence in support of his testimony.  In addition, he had

at best vague statements to make about the assets reflected in the Simply Media balance sheet

prepared by him as of the end of the first six months of 2005 (Exhibit 16) (the "2005 Balance

Sheet").  The 2005 Balance Sheet indicates current assets of $4,525,570.00 as follows:

| | |
|---|---|
| Cash & Equivalents | $   570,232.00 |
| Accounts Receivable | $2,968,071.00 |
| Inventory | $   745,937.00 |
| Prepaid Assets | $   241,330.00 |
| Total Current Assets | $4,525,570.00 |

The 2005 Balance Sheet indicates current liabilities of only $167,939.00 as follows:

| | |
|---|---|
| Accounts Payable | $     86,352.00 |
| Income Taxes Due | $     81,587.00 |
| Total | $   167,939.00 |

Deaver Brown provided only vague testimony at trial to explain the difference in assets between

the 2005 Balance Sheet and the Simply Media bankruptcy schedules signed by him under

penalty of perjury.  He offered no specific testimony or documentary evidence to explain how

the company was liquidated or how the proceeds of liquidation were utilized.

      For the reasons discussed above, the Court finds the testimony of the Defendants

regarding Simply Media to lack credibility.  Moreover, the Defendants failed to demonstrate that

Simply Media received any value at all for its payment of tens of thousands of dollars of

personal residential bills of the New Hampshire Property, bills that, as Christina Brown

acknowledged at trial, Simply Media had no written obligation to pay.  While both Defendants

testified that Simply Media's payment of their personal expenses was ratified by the Simply

Media board of directors, the former chairman of the board testified that the board did not

authorize Simply Media to pay the personal expenses of the Defendants or for the Defendants'

residences.  In the Court's view, the evidence presented does not support a finding that Simply

Media received reasonably equivalent value for the transfers.

> **b.**  **Engaged in Business with Unreasonably Small Capital and Incurring Debts Beyond an Ability to Pay**

The Plaintiffs did not present the Court with evidence that would demonstrate that

Simply Media was engaged or was about to engage in a business or a transaction for which its

remaining assets were unreasonably small in relation to the business or transaction or that

Simply Media intended to incur, or believed or reasonably should have believed that it would

incur, debts beyond its ability to pay as they became due.  According to the Plaintiffs, the

Defendants' destruction of all of Simply Media's business records makes it impossible for the

Court to determine with any certainty whether Simply Media was insolvent, was rendered

insolvent, or was left with unreasonably small capital as a result of these transfers.  The Plaintiffs

request that the Court make inferences adverse to the Plaintiffs based on their spoilation and

non-production of evidence.

Spoilation is "the intentional, negligent, or malicious destruction of relevant evidence."

Townsend v. American Insulated Panel Co., 174 F.R.D. 1, 4 (D. Mass. 1997).

> The First Circuit has many times visited the principles concerning spoilation of
> evidence and the evidentiary inferences that can be drawn as a result.  The
> permissive (as opposed to mandatory) negative inference "springs from the
> commonsense notion that a party who destroys a document (or permits it to be
> destroyed) when facing litigation, knowing the document's relevancy to issues in

the case, may well do so out of a sense that the document's contents hurt his position." Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998). There are at least three rationales for allowing the inference. There is the general evidentiary rationale, in that the document must have some relevance to the claim(s) if the party charged with the spoliation went to the trouble to destroy it. Nation-Wide Check Corp., Inc. v. Forest Hills Distribs., Inc., 692 F.2d 214, 218 (1st Cir. 1982). There are also policy-based prophylactic and punitive reasons for permitting the inference, in that allowing the inference by the fact-finder deters future pre-trial destruction of documents and penalizes the spoiler by placing it at risk of an erroneous judgment that it might avoid if it had preserved the document. Id. See also Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) (adding to the evidentiary, prophylactic and punitive rationales, a "remedial rationale" suggesting that the adverse inference should function for the purpose "of restoring the prejudiced party to the same position he would have been in absent the  wrongful destruction of evidence by the opposing party").

Pelletier v. Magnusson, 195 F. Supp. 2d 214, 235-36 (D. Me. 2002). "The general principles concerning the inferences to be drawn from the loss or destruction of documents are well established. When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party which has prevented production did so out of a well-founded fear that the contents would harm him." Nation-Wide, 692 F.2d at 217. The nonproduction of documents is sufficient by itself to support an adverse inference, i.e., an inference that the contents of the documents would be unfavorable to the possessor, even if no other evidence for the inference exists. Id. at 217-18. The adverse inference depends upon a showing that the party who destroyed the evidence had notice both of the potential claim and that the documents were relevant at the time the party failed to produce them or destroyed them. Id. at 218; Mayes v. Black & Decker (U.S.), Inc., 931 F. Supp. 80, 85 (D.N.H. 1996). In determining the appropriate sanction to be imposed upon the spoilator in a particular case, courts consider (1) whether the opposing party was prejudiced as a result of the destruction; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the spoilator was in good faith or bad faith; and (5) the

potential for abuse if the evidence is not excluded.  Nation-Wide, 692 F.2d at 218; Mayes, 931 F.

Supp. at 83.

In the instant case, it is undisputed that the Plaintiffs requested documents pertaining to

Simply Media's financial condition during discovery and such documents were never produced.

At trial both Deaver Brown and Christina Brown acknowledged that they produced no

documents in connection with this case.  Christina Brown testified that she was unaware of the

existence of any paper or electronic record for Simply Media.  When questioned about

documents at trial, Christina Brown testified as follows:

> Q.     And--and you have no documents because you--you don't retain documents.
>
> A.     No.
>
> Q.     You discard them.
>
> A.     Yes.
>
> Q.     And since the commencement of this litigation you continued to discard
>        documents.
>
> A.     Yes.

Transcript, Nov. 20, 2007, Vol. I, p. 120, lines 14-21.  Deaver Brown also stated repeatedly

during the trial "I don't have any records."  E.g., Transcript, Nov. 20, 2007, Vol II, p. 202, line

19; Transcript, Dec. 6, 2007, Vol. II, p. 137, lines 17-18.  He testified that Plaintiffs' counsel,

"they were the keepers of the records because they have the most complete records of anybody."

Transcript, Dec. 6, 2007, Vol. I, p. 73, lines 3-4.  In an audio clip from a book authored by

Deaver Brown entitled "Legal Proceedings:  Being a Witness, Deponent, Plaintiff or Defendant,"

which was played during the trial, Deaver Brown explained his long-standing litigation practice

of not keeping any documents and encouraged and instructed other prospective litigants to do the

same:

Documents are an interest[ing] area.  I learned early that I don't want to be their museum curator to keep all their stuff, and you're not required to.  And I can't tell you how much criticism I've gotten in court for this.  Judge--not judges, but lawyers are always saying that I've destroyed documents, that I've done this and I've done that.  I have not destroyed documents, I don't keep them.

It is very important not to keep anything you don't need because that opens doors. . . .

I think documents are a way to get into a lot of trouble. . . .

[Discarding documents] makes for a much tighter business, and my line about that is, one man's trash is another's treasure.  Business people are trying to get rid of stuff.  Lawyers just try to keep stuff. . . .

Now the final point is, if you have documents, I've generally found that they don't do any good, and that's been my experience. . . .

So if you don't need something, discard it.  Don't trash it.  In other words, the last thing you ever can do is, if you're ever sued, don't start throwing things out because that's like being a witness.  That's fraud.  Don't do that.  If it's a regular habit with you, that's good. . . .

So be very careful about documents.  Generally, they can't help you, they can hurt you. . . .

Transcript, Dec. 6, 2007, Vol. II, p. 143, line 17 to p. 147, line 12.

In the Court's view, the Defendants' nonproduction and destruction of documents constitutes spoilation of evidence.  The Plaintiffs have satisfied the necessary foundational requirement by demonstrating that Deaver Brown and Christina Brown were aware that financial records should be retained, but, in utter disregard of the rights and interests of their creditors and governmental agencies, such as the Internal Revenue Service and the Department of Labor, they decided to discard such records, affording no one the opportunity to retrieve their personal records or those of Simply Media in order to check or verify anything.  This is not a situation where the Defendants discarded their records a little too early.  Rather, this is a situation where the Defendants decided to discard their personal and corporate records, as a matter of practice,

26

because documents "are a way to get into a lot of trouble" and "they can't help you, they can hurt you."  The Defendants have adopted an attitude of "we don't care if anyone needs them."  Such an attitude will not be tolerated in this Court.  As the First Circuit Court of Appeals explained in the objection to discharge context,

> The very purpose of certain sections of the law . . . is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.  The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. . . . Neither the trustee nor creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987).

The Court finds that the Defendants were aware of the Plaintiffs' claims and yet they still continued to destroy and discard documents.  Such destruction and non-production of documents severely hampered the Plaintiffs' ability to establish their claims.  Accordingly, the Court will make negative evidentiary inferences and will give the Defendants' non-production of documents enough weight to find that the Plaintiffs' burden has been satisfied in this count.  See Nation-Wide, 692 F.2d at 219.  Thus, the Court finds that, at the time Simply Media paid expenses associated with the New Hampshire Property, Simply Media was either insolvent or was rendered insolvent or was left with unreasonably small capital as a result of these, and other, transfers.  Having proven the elements of its claim under RSA 545-A:4(I)(b), the Court shall avoid Simply Media's transfer of $56,585.00 to third parties on account of services provided to the New Hampshire Property.

### 2.    Recovery of Avoided Transfer under 11 U.S.C. § 550(a)

In addition to seeking to avoid Simply Media's transfers of money, the Plaintiffs seek to recover the amount of the transfers from Deaver Brown and Christina Brown, individually and as

the successor trustee of the Fisher Mountain Trust, as the Defendants were the beneficiaries of the transfers.  The evidence is clear that the payments Simply Media made did not benefit Simply Media but rather benefitted Deaver Brown as the occupant of the New Hampshire Property, Christina Brown individually to the extent of her record title interest in Parcel 68 and her interest in Parcel 67 as the beneficiary of the Fisher Mountain Trust, and Christina Brown as the postpetition successor trustee of the Fisher Mountain Trust.  Accordingly, § 550(a) of the Bankruptcy Code permits the Trustee to recover the transferred amount for the benefit of the Simply Media bankruptcy estate from Deaver Brown and Christina Brown, both individually and as trustee.

## IV.    CONCLUSION

For the reasons set forth above, the Court shall deny Count I and Count III as to Parcel 67, shall grant Count I and Count III as to Parcel 68, shall deny Count IV, and shall grant Count V.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   May 19, 2008                         /s/ J. Michael Deasy
                                             J. Michael Deasy
                                             Bankruptcy Judge

28